UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RANDY SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 1:17-cv-4262-WTL-MJD |
| ) | |
| FCA US LLC., ) | |
| ) | |
| Defendant. ) | |

## ENTRY ON MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on the Defendant's motion for summary judgment (Dkt. No. 57). The motion is fully briefed, and the Court, being duly advised, **GRANTS** the motion for the reasons set forth below.

### I. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed, and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, a party who bears the burden of proof on a particular issue may not rest on its pleadings, but must show with what evidence it has that there is a genuine issue of material fact that requires trial. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the

record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II. FACTUAL BACKGROUND

The relevant background facts of record, viewed in the light most favorable to the Plaintiff, as the non-moving party, are as follow.

The Defendant hired the Plaintiff as a Process Lead at its Tipton, Indiana plant on March 10, 2014. At the time of his hire, there were two types of Process Leads at the Tipton facility - Process Lead A and Process Lead B. The Process Lead A was responsible for administrative duties, including the Chrysler Attendance and Timekeeping System (CATS) and overtime tracking, and the Process Lead B was responsible for supervising operations on the manufacturing floor. The Plaintiff was hired as a Process Lead B. During his initial employment interview, the Plaintiff mentioned his engagement in the Oklahoma National Guard. Two months later, he requested and received a letter from the Defendant so that he could seek excusal from Oklahoma National Guard service to continue his training with the Defendant.

On January 29, 2015, the Plaintiff was called to a meeting with HR Manager Mark McLean, Manufacturing Manager Joe Good, and Business Unit Leader Gary Faurote. During the meeting, McLean informed the Plaintiff that his overall performance rating for 2014 was a 1, which equated to the lowest possible performance and leadership ratings. McLean told the Plaintiff that his employment with the Defendant was ending and that Plaintiff had until February 5, 2015, to resign or he would be terminated. At no point during this discussion did the Plaintiff mention his military service. The Plaintiff refused to resign.

On February 5, 2015, the same day by which the Plaintiff had to decide whether to resign, at 5:22 a.m., the Plaintiff texted his supervisor, Faurote, that he had been "called up" by

the Oklahoma National Guard and would not be coming into work that day. The Plaintiff explained that he had been contacted by his unit and told that in order to retire, he would need to report the next day. The Plaintiff also stated that he would be on leave for sixty days and would send a copy of his orders to the Defendant within five days. Rather than terminate the Plaintiff's employment, as originally communicated during the January 29, 2015, meeting, the Defendant placed the Plaintiff on a military leave of absence but continued to recommend him for termination.

The Plaintiff repeatedly sent the Defendant a copy of his military orders, but the Defendant states that it never received them. This prompted the Defendant to issue a five-day letter to the Plaintiff asking him to report to work or provide documentation for his absence. This letter is consistent with the Defendant's practices. Specifically, if an employee is absent for more than five days without documentation for the absence, the Defendant will send the employee a letter requesting that he or she return to work or provide documentation for the absence by a specific date. If the employee fails to report back to work or provide the necessary documentation, then he or she can be terminated. The Plaintiff responded to the five-day letter and provided the Defendant with a copy of his military orders. While the orders covered the Plaintiff's leave of absence, the Defendant, believing that they did not, sent a second five-day letter.

The Plaintiff returned from military leave on April 20, 2015. Upon arriving at work, the Plaintiff was told to see salary administrator Danna Weichmann[1] because he had been fired and needed to be reinstated. The Plaintiff went to Weichmann's office at a different facility, and upon arrival in her office, the Plaintiff saw a folder with his various military orders in it. When

---

[1] During this litigation, Danna Miller's name changed from Miller to Weichmann.

the Plaintiff questioned Weichmann about the military orders, she accused him of forging them. Subsequently, Weichmann demanded that the Plaintiff produce additional orders to be reinstated. The Plaintiff provided additional copies of the same orders that were previously sent to Weichmann.

The Plaintiff was reinstated to his former role on April 27, 2015. The Defendant compensated the Plaintiff for the week of April 20 to April 27, 2015. On May 5, 2015, the Defendant placed the Plaintiff on a Performance Improvement Plan ("PIP"). The Defendant provided the Plaintiff with ninety days to improve his job performance. As part of the PIP, the Defendant provided Plaintiff with feedback on his performance every thirty days. The thirty-day review on June 4, 2015, stated that Plaintiff was "meeting the requirements of his PIP but ha[d] not gone beyond these requirements in performance. [The Plaintiff] needs to be more engaged in issues with the Administrative Process Lead, and lead changes to the process w[h]ere it can be improved." Dkt. No. 62-9 at 4. After the thirty-day review, the Plaintiff filed his Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination on June 9, 2015, alleging that he had been discriminated against based upon his race, African American.

There are two versions of the sixty-day review, one which states that the Plaintiff "is meeting the requirements of his PIP but has not gone beyond these requirements in performance," Dkt. No. 62-9 at 6, and another which states that the Plaintiff "is still not doing anything beyond minimal requirements," Dkt. No. 58-2 at 6.

The document for the final review, dated August 3, 2015, stated that Plaintiff was continuing to do the bare minimum that was required, that he was still struggling to use the computer, that he was still having trouble getting things done accurately and in a timely manner,

4

and that he needed to start taking more of a leadership role in the areas he was responsible for managing. The Plaintiff was never actually given the final review.

On August 5, 2015, McLean prepared the Plaintiff's termination summary.[2] Two months elapsed after the end of Plaintiff's PIP before, on October 10, 2015, McLean notified the Plaintiff that he was terminated for failing to meet the requirements of his PIP.

After the Plaintiff was terminated, he obtained a position with PIC. PIC is a contractor group that inspects materials at the Defendant's five Kokomo-region plants, which includes the Tipton facility. Because the Plaintiff had been terminated from the Tipton facility, he was not permitted to work at that location. The Plaintiff was permitted to work at the Defendant's other plants in the Kokomo region.

C.H. and A.D., who had not engaged in statutorily protected conduct under Title VII and who were not known to be part of the United States military, were placed on PIPs. Both C.H. and A.D. were permitted to complete their respective PIPs without having them later altered to make a showing of poor performance. Neither C.H. nor A.D. was terminated due to having been placed on a PIP.

### III. DISCUSSION

The Plaintiff initially brought claims under Title VII for racial discrimination and retaliation, as well as a claim under the Uniformed Services Employment and Reemployment Act ("USERRA"). The Plaintiff voluntarily dismissed the racial discrimination claim, Dkt. Nos. 53 & 54, and the Defendant seeks summary judgment on the Plaintiff's remaining claims.

---

[2] The Defendant argues that it was Josh Kucholick who prepared the termination summary. Viewing the evidence in the light most favorable to the Plaintiff, however, the Court will consider it to be McLean.

### A. Title VII Retaliation

Title VII prohibits an employer from "discriminat[ing] against" an employee because she "opposed any practice" made unlawful by Title VII. 42 U.S.C. § 2000e-3(a). The Plaintiff argues that his retaliation claim survives the Defendant's motion for summary judgment under both the direct method and the indirect, burden-shifting method

*1. Indirect Method*

To survive the Defendant's motion for summary judgment under the indirect method, the Plaintiff must point to evidence from which a reasonable jury could determine that the Plaintiff (1) engaged in a protected activity; (2) was meeting his employer's legitimate expectations; (3) suffered an adverse employment action; and (4) his employer treated him less favorably than similarly situated employees who did not engage in the protected activity. *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 885 (7th Cir. 2018). If the Plaintiff establishes his *prima facie* case, the burden shifts to the employer to present a legitimate, non-discriminatory reason for the adverse employment action. *Id*. On such a showing, the burden then shifts back to the plaintiff to show that the employer's proffered reason is a pretext for discrimination. *Id*.

The Defendant concedes that the Plaintiff engaged in protected activity and suffered an adverse action when he was terminated,[3] but argues that the Plaintiff failed to meet its expectations and failed to point to similarly situated employees who were treated more favorably. Putting aside the question of the Plaintiff's actual performance and assuming, *arguendo*, that there is evidence which could establish a *prima facie* case, the Defendant has

---

[3] While the Plaintiff asserts in his Complaint that the Defendant "attempted to keep [the Plaintiff] from being hired at a company that contracts with [the] Defendant," Dkt. No. 1 at 6, he does not assert that as an adverse action in response to the instant motion.

presented a legitimate, non-discriminatory reason for terminating the Plaintiff, namely that his performance was not satisfactory.

The Plaintiff has failed to point to evidence that would support a finding that this reason is pretextual. The Plaintiff points to his testimony and the PIP to support his contention that the Defendant's reason is pretextual. This evidence, however, does not support this contention, but rather only shows that the Plaintiff disagrees with the Defendant's assessment of his performance. *See Brown v. Ill. Dep't of Nat. Res.*, 499 F.3d 675, 684 (7th Cir. 2007) ) ("[A] plaintiff's own opinions about his work performance or qualifications do not sufficiently cast doubt on the legitimacy of his employer's proffered reasons for its employment actions."). Similarly, the Plaintiff points to the two versions of the sixty-day review as evidence that the reasons provided for his termination are pretextual. However, the Defendant has pointed to evidence that it routinely gathers feedback for its reviews over a period of time, and the Plaintiff fails to point to any evidence which suggests that these changes were not simply part of the feedback process. There are no dates on either version suggesting when they were last edited.

Furthermore, the comments for the reviews are consistent throughout. For the thirty-day review, the Defendant noted that the Plaintiff "is meeting the requirements of his PIP, but has not gone beyond these requirements in performance." Dkt. No. 62-9 at 4. After the filing of the Plaintiff's EEOC complaint, for the sixty-day review, the Defendant wrote the same thing. *Id*. at 6. Even in the version the Plaintiff claims was inappropriately altered, the comment was similar—the Plaintiff "is still not doing anything beyond minimal requirements." Dkt. No. 58-2 at 6. While the wording may have varied, the meaning of these statements are consistent, and thus the change is not evidence upon which a jury could rely to find pretext.

7

Finally, the Plaintiff argues that he was told he was terminated for failing to satisfy his PIP, as opposed to poor performance, and that therefore the Defendant's contention that it terminated the Plaintiff for poor performance is pretext. This, however, is a distinction without a difference—to be terminated for failing to complete a Performance Improvement Plan is, practically speaking, synonymous with poor performance. No reasonable jury, viewing the evidence in the light most favorable to the Plaintiff, could find that the reason given for the Plaintiff's termination was pretextual. Accordingly, the Plaintiff fails to point to evidence which could support his retaliation claim under the indirect method.

## 2. Direct Method

"To prove retaliation under the direct method, [the Plaintiff] must show that: (1) he engaged in protected activity, (2) he suffered a materially adverse employment action, and (3) there was a causal link between his protected activity and the adverse action." *Harden v. Marion Cty. Sheriff's Dep't*, 799 F.3d 857, 861-62 (7th Cir. 2015). Again, the Defendant does not contest that the Plaintiff engaged in a protected activity and suffered a materially adverse employment effect. Therefore, the only remaining question is whether there was a causal link between the protected activity and the adverse employment action.

The Defendant argues that there is no evidence of a causal link between the Plaintiff's filing of an EEOC complaint and his termination because the Defendant communicated its intent to terminate the Plaintiff's employment on January 29, 2015, before the filing of the EEOC complaint and that the performance issues identified in the Plaintiff's PIP prior to the filing of the EEOC are the same problems identified after the filing.[4]

---

[4] The Defendant also argues that the relevant decision-makers were unaware of the Plaintiff's EEOC complaint; because there is conflicting evidence, for the purposes of this

8

The Plaintiff argues that the Defendant did not make its decision to terminate the Plaintiff on January 29, 2015, because the Defendant subsequently allowed him to go on military leave and put him on a PIP upon his reinstatement. This is not quite correct. The undisputed evidence demonstrates that the Defendant did unequivocally decide to terminate the Plaintiff on January 29, 2015; he was only retained because he was placed on military leave. The Defendant continued to recommend the Plaintiff for termination after his placement on military leave. Upon his return, the Defendant did not terminate him, but rather decided to place him on a PIP to give him an opportunity to improve. Thus, while the Defendant did not make its ultimate decision to terminate the Plaintiff in January 2015, it did have clearly documented issues with the Plaintiff that it believed merited termination.

The performance issues continued through the remainder of the Plaintiff's tenure. Again, the Plaintiff points to the two versions of the sixty-day review as evidence that the reasons provided for his termination are pretextual and that his termination is linked to the filing of his EEOC complaint. However, as noted above, there is no evidence on which a reasonable jury could rely to so find. The evidence is undisputed that Defendant intended to terminate the Plaintiff prior to his leave, placed him on a PIP, considered him to not be going beyond minimal requirements before his EEOC complaint, and considered him to still not be doing so after the EEOC complaint.

The Plaintiff's remaining argument is that the Defendant made the final decision to terminate him less than two months after he filed his EEOC complaint, when it drafted the termination summary in August 2015. While the Defendant notes that the termination did not

---

motion, the Court will assume that the relevant decision-makers were aware of the EEOC complaint.

occur until October 2015, four months after the filing of the EEOC complaint, in either case "suspicious timing alone rarely is sufficient to create a triable issue, and on a motion for summary judgment, mere temporal proximity is not enough to establish a genuine issue of material fact." *Riley v. City of Kokomo*, 909 F.3d 182, 188-89 (7th Cir. 2018) (internal quotation marks omitted). The Plaintiff fails to point to other evidence which could support his claim. Accordingly, the Plaintiff has failed to present his retaliation claim under the direct method, and summary judgment is **GRANTED** as to this claim.

### B. Uniformed Services Employment and Reemployment Act

The Plaintiff also brings a claim under the Uniformed Services Employment and Reemployment Act. USERRA provides that "[a] person who is a member of . . . a uniformed service shall not be denied . . . retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership." 38 U.S.C. § 4311(a). Such discrimination exists where the employee's service membership was "a motivating factor" in the employer's adverse action "unless the employer can prove that the action would have been taken in the absence of such membership." 38 U.S.C. § 4311(c)(1). "This provision creates a two-step burden-shifting scheme: (1) once a plaintiff makes out a *prima facie* case by showing that his membership was 'a motivating factor,' (2) the burden shifts to the employer to prove that it would have taken the same action regardless." *Arroyo v. Volvo Grp. N. Amer., LLC*, 805 F.3d 278, 284 (7th Cir. 2015).

The Plaintiff argues that:

> [s]ufficient evidence exists to demonstrate that [the Plaintiff's] military service was a motivating factor in [the] Defendant's decision to terminate him. [The] Defendant made several suspicious statements about [the Plaintiff's] military service including accusations of lying and forgery. Equally suspicious is the fact that [the Plaintiff] was not promptly reinstated and had to jump through additional hoops just to come back to work. Additionally, [the] Defendant immediately

10

placed [the Plaintiff] on a PIP upon his return from active duty service. Finally, [the] Defendant cannot show that it would have terminated [the Plaintiff's] employment without regard to his military status or leave.

Dkt. No. 61 at 22. In support of this argument, the Plaintiff argues (1) that in spite of having received multiple copies of the Plaintiff's orders, the Defendant threatened to terminate him while he was on military leave; (2) the Defendant failed to promptly reinstate him; and (3) the Defendant placed him on a PIP immediately following his return from military leave. The problem with the Plaintiff's argument is that the Defendant wanted to terminate the Plaintiff prior to his military leave, and therefore the fact that the Defendant continued to wish to do so during and after his military leave is not evidence that the Defendant had decided to terminate the Plaintiff because of his military status. Rather, as discussed above, the evidence demonstrates that the Defendant believed that the Plaintiff's poor performance warranted termination throughout this entire time period. Accordingly, the Defendant's request for summary judgment as to this claim is **GRANTED**.

## IV. CONCLUSION

For the reasons set forth above, the Defendant's motion for summary judgment, Dkt. No. 57, is **GRANTED** in its entirety.

SO ORDERED: 6/26/2019

Hon. William T. Lawrence, Senior Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification